IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ADAM LEE III | * | |
| | * | |
| Plaintiff. | * | |
| | * | Civil Action |
| v. | * | File #_____ |
| | * | |
| PATRICK LABAT, in his | * | JURY TRIAL DEMANDED |
| Individual AND official capacities as | * | |
| Fulton County Sheriff | * | |
| | * | |
| Defendants. | * | |

## COMPLAINT

COMES NOW the Plaintiff, ADAM LEE by and through his attorney,

Lance LoRusso, and files this complaint pursuant to 42 U.S.C. § 1983, as well as

state law causes of action enumerated herein, against Defendant Patrick Labat, and

states the following in support thereof:

## INTRODUCTION

This is a civil action under 42 U.S.C § 1983 seeking damages against

Defendant for committing acts, under color of law, with the intent and for the

purpose of depriving the Plaintiff of the rights secured under the Constitution and

laws of the United States; for damaging Plaintiff's reputation through an

unfounded, malicious, and vexatious campaign of public disparagement

accompanied by the deprivation of Plaintiff's property rights as secured by the

Fourteenth Amendment to the United States Constitution. Plaintiff also asserts state law defamation claims against Defendant. Plaintiff seeks compensatory damages, attorneys' fees, and costs for Defendants' unlawful actions. Plaintiff also seeks compensatory damages, including punitive damages against defendant.

## JURISDICTION AND VENUE

1. Plaintiff's claim arises under the Fifth and Fourteenth Amendments to the United States Constitution, as made actionable by 42 U.S.C § 1983. Plaintiff's claims present federal questions over which this Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331 and 28 U.S.C § 1343 (a).

2. Plaintiff also asserts defamation and invasion of privacy claims arising under Georgia law, O.C.G.A. § 51-5-1, *et seq.* This Court has supplemental jurisdiction of these state law claims pursuant to 28 U.S.C § 1367.

3. Pursuant to O.C.G.A. § 50-21-26, Plaintiff placed Defendant Labat and the State of Georgia on notice of his claim by mailing the required notice via statutory overnight delivery certified, to the parties.

4. This Court is a proper venue as the acts giving rise to Plaintiff's claims occurred within this District.

**THE PARTIES**

5. Plaintiff was, at all times relevant, a Lieutenant Colonel with the Fulton County Sheriff's Office and a certified peace officer in the State of Georgia. Further, Plaintiff is a highly decorated, well-recognized, law enforcement leader, detective, manager, commander, and officer. Plaintiff has received countless accolades, and commanded the City of Atlanta Homicide and Major Crimes Unit.

6. Plaintiff resides in the Northern District of Georgia and is subject to the jurisdiction of this court.

7. Defendant Patrick Labat is and was, at all times relevant, the Sheriff of Fulton County and a resident of Fulton County, Georgia residing in the Northern District of Georgia. Once served with process, he is subject to the jurisdiction of this Court.

*Facts Common to All Counts*

8. At all times relevant to this matter, Plaintiff was a "classified employee" per Fulton County ordinances to wit: Section 34-71 "Classified and Unclassified Services, specifically sections (a)(3-5) & (b).

9. Per Fulton County Ordinance 34-71 & 34-74, as classified employee who had completed his probationary period, Plaintiff was entitled to due process prior to the institution of any discipline. As such, Plaintiff had a property

interest in his employment as a Lieutenant Colonel with the Fulton County Sheriff's Office, and was vested with a right to a public name clearing in connection with any allegations of misconduct at all times relevant.

10. On April 16, 2023, following the highly-publicized death of Fulton County Jail Inmate LaShawn Thompson, Defendant Labat not only forced Plaintiff to resign, Defendant Labat went on to unnecessarily and in direct violation of Plaintiff's constitutional right against deprivation of reputational liberty, continually speak with news media outlets and released statements to the press and others advising he "cleaned house," referring directly to the departure of the Plaintiff falsely attributing problems at the jail connected with the death of LaShawn Thompson to Plaintiff.

11. Defendant Labat also gave the distinct impression that the Plaintiff was to blame for the death of LaShawn Thompson and other deplorable conditions at the Fulton County Jail on Rice Street in Atlanta, Georgia (Fulton County Jail- Rice Street) when he knew the same to be manifestly false.

12. At all times, Defendant Labat was aware of the insect infestation in the housing unit occupied by LaShawn Thompson.

13. Defendant Labat confirmed his knowledge of the insect infestation in communications with employees of the Fulton County Sheriff's Office and others.

14. Plaintiff was tasked, by Defendant Labat, with creating and managing an investigatory team within the Fulton County Jail- Rice Street to uncover unlawful activity by Fulton County Jail Staff.  Plaintiff's efforts led to the arrest and indictment of nineteen jailers and employees, the termination of others, and procedures that reduced the influx of drugs, cellphones, and other contraband into the Fulton County Jail- Rice Street.

15. Defendant Labat's ***unprivileged*** statements to the media and others, which were not required for the performance of his official duties as Sheriff of Fulton County and were made outside of the scope of his official duties, were false, defamatory, slanderous, and intended to destroy the reputation of the Plaintiff, a highly decorated law enforcement officer in an effort to direct the blame for LaShawn Thompson's death, the out-of-control influx of contraband, and the otherwise unsatisfactory – and unsafe- jail conditions away from Defendant Labat.

16. Defendant Labat's ***unprivileged*** statements to the media and others were neither required for him to perform his lawful duties nor within his discretion authority as said statements did not serve the lawful goals of his office or serve to fulfill his oath of office and were made outside of the scope of his official duties.

17. Defendant Labat knew the Fulton County Jail- Rice Street was understaffed; that equipment failures allowed inmates to enter cells attacking other inmates at will; and that jail staff were working in unsafe conditions, well outside of acceptable inmate to staff ratios.  Inmates and staff alike were put at risk of violent attacks, including stabbings.  Inmate pleas for help were often ignored.

18. Defendant Labat was aware that the Plaintiff was working to maintain order and improve conditions at the Fulton County Jail- Rice Street.  Despite these facts, Defendant Labat told the public that the Plaintiff was to blame.  Defendant Labat also falsely told media sources that the Plaintiff was terminated after a full investigation, using the phrase "due process," when no such investigation took place.

19. Although LaShawn Thomson died in custody at the Fulton County Jail-Rice Street in September 2022, Defendant Labat did not perform an investigation, or cause any such investigation to be conducted, into the circumstances of his death until April 2023, when news stories of his death rose to prominence.

20. Defendant Labat did not conduct any investigation, or cause any such investigation to be conducted, into Plaintiff's involvement in the custody, control, supervision, or even contact with LaShawn Thompson.

21. Although Plaintiff occupied a position on the command staff of the Fulton County Sheriff's Office, Defendant Labat never interviewed Plaintiff or asked or ordered anyone to interview Plaintiff in connection with the death of LaShawn Thompson.

22. The relevant organizational chart of the Fulton County Sheriff's Office, attached as Exhibit A, shows Plaintiff, as a Lieutenant Colonel, in charge of Administration with a Major J. Moffett serving under him. Plaintiff had no administrative responsibility whatsoever for inmate housing at the Fulton County Jail- Rice Street.

23. The relevant organizational chart of the Fulton County Sheriff's Office shows Lieutenant Colonel D. Singleton in charge of inmate housing at the Fulton County Jail- Rice Street.

24. The relevant organizational chart of the Fulton County Sheriff's Office shows Plaintiff and Lieutenant Colonel Singleton reported to the Assistant Chief Jailer, B. Lacounte.

25. The relevant organizational chart of the Fulton County Sheriff's Office was approved by Defendant Labat, utilized by Defendant Labat, and Defendant Labat adhered to the operational assignments and organizational structure reflected on said organizational chart at all times relevant.

26. Plaintiff was not involved in *any* way, was not charged in *any* manner, was not tasked to *any* extent, with the custody, control, or supervision of LaShawn Thompson. In fact, Plaintiff's scope of control and duties did not even include the floor where LaShawn Thompson was housed.

27. Defendant Labat was aware at all times relevant that Plaintiff was not responsible in any way for supervising or overseeing the housing unit, or the personnel assigned there, wherein LaShawn Thompson was located at the time of his death;

28. Defendant Labat told multiple media outlets that he conducted a full investigation into the death of LaShawn Thompson when he failed to do so and failed to direct anyone to do so.

29. Defendant Labat told journalists that he terminated Plaintiff as part of his efforts to "clean house."

30. Defendant affirmatively told journalists inquiring as to why he "cleaned house" in April 2023 when LaShawn Thompson died in September 2022 that he had to wait to "give due process" to Plaintiff, even though he knew Plaintiff was given no due process and was never interviewed about the death of LaShawn Thompson.

31. Defendant Labat failed to provide Plaintiff with any meaningful opportunity for name clearing, calling him to the sheriff's office after hours on April 14, 2023 and terminating his employment within a few minutes of his arrival.

32. Defendant Labat failed to provide Plaintiff any opportunity to provide a statement to any investigators concerning the death of LaShawn Thompson.

33. Defendant Labat failed to provide Plaintiff any opportunity whatsoever to make any statement in his defense concerning the death of LaShawn Thompson.

34. A subsequent Georgia Bureau of Investigation inquiry revealed NO record of any culpability on the Plaintiff's part as it relates to Mr. Thomas or any other death of a Fulton County inmate.

35. Defendant Labat's desire to falsely lay blame at the feet of the Plaintiff was unfortunately successful. Plaintiff has been publicly ostracized, his face and the false narrative created and promulgated by Defendant Labat has been propelled throughout the internet, Plaintiff has been confronted about his supposed role in the gross deficiencies at the Fulton County Jail, and the negative publicity from Defendant Labat's false statements have prevented him from finding employment.

36. Defendant Labat created, disseminated, and advanced a false narrative about the Plaintiff and his profession that continues to cause him personal, professional, and economic harm.

37. Since Defendant Labat's concerted, deliberate, and malicious effort to smear his good name, people who recognize the Plaintiff have invariably seen his photos online in uniform when commentators announced his departure, with Defendant Labat holding up the Plaintiff as an example his efforts to "clean house."

38. Far beyond the scope of his official duties as Sheriff of Fulton County, Defendant Labat, as Plaintiff's employer, pursued multiple media opportunities to publicly make false statements of a stigmatizing nature attending Plaintiff's discharge.

39. On April 20, 2023, Defendant Labat published a press release, that is still prominently displayed on the Fulton County Sheriff's Office Instagram page as of April 11, 2024, which reads, in relevant part, as follows:

> Atlanta, GA - after reviewing preliminary evidence gathered during the internal investigation being conducted by the Office of Professional Standards (OPS), Sheriff Patrick "Pat" Labat is announcing sweeping changes at the Fulton County Jail.

> Collectively, the executive team that's been in place has more than 65 years of jail at administration law enforcement experience. When leveraged at it's very best, that experience can be invaluable. However, it can also lend itself to complacency, stagnation and settling for the status quo.

"It's clear to me that it's time, past time, to clean house." At an executive staff meeting held over the weekend, Sheriff Labat asked, received, and accepted the resignation of the Chief jailer, Assistant Chief Jailer and Assistant Chief Jailer, Criminal Investigative Division.

40. Per the Fulton County Sheriff's Office organizational chart referenced above, Plaintiff was the "Assistant Chief Jailer Criminal Investigative Division."

41. Defendant Labat provided interviews and promulgated false statements to local media outlets furthering his false narrative concerning Plaintiff, including but not limited to the following statements made during a radio interview on V103 April 18, 2023:

> Host: Thank you for being here again, and you was just here. And unfortunately, some circumstances over at Fulton County Jail have brought you back. *The internal investigation into LaShawn Thompson's death, I don't know what you can tell us and what you can't tell us, but it's my understanding that certain people no longer have a job.*

> Pat Labat: First, that's very true. All right. But first, if you allow me to certainly express our condolences, certainly to Mr. LaShawn Thompson and his family. It's a hard time for them, us as well. *Tragic as it may be, we are certainly going to get to the bottom of what did or didn't happen and hold those people accountable.*

42. Defendant Labat provided information to WXIA-11 Alive that led to the following broadcast on April 17, 2023:

Commentator: Right now at noon, we continue to follow a shakeup at the Fulton County Jail. Today, *three top ranking jailers, part of the sheriff's own executive team, are gone. They resigned after the sheriff asked them to step down.* This comes just days after the family of LaShawn Thompson revealed horrifying evidence of how they say he died in his jail cell. 11 Alive's John Sherick has the story as the sheriff says this shakeup is just getting started.

John Sherick: The photos just released from inside the Fulton County Jail showing LaShawn Thompson's cell, the bed bug infested cell where Thompson was being held for a misdemeanor charge where he died this past summer. Photos that were part of the Medical Examiner's autopsy of Thompson. *They are now part of the public outcry over conditions inside the jail that led Fulton County Sheriff Patrick Labat to declare Monday, quote, "It is past time to clean house."*

*Out are three veteran members of the Sheriff's executive team,* the Chief Jailer, Colonel John Jackson, and two Assistant Chief Jailers, Lieutenant Colonel Derek Singleton and *Lieutenant Colonel Adam Lee.*

43. News stories on WXIA- 11 Alive displayed photographs of Plaintiff in his Fulton County Sheriff's Office uniform provided by Defendant Labat for public display as part of his deliberate course of unlawful and improper conduct.

44. The radio interview and WXIA news stories referenced herein still appear on April 11, 2024.

45. Defendant Labat has made no effort to correct, remove, retract, or update any of his statements following the release of the GBI investigation or since April 14, 2023.

46. To this day, Plaintiff continually receives emails, calls, and texts from friends and others who find these and other comments by Defendant Labat that remain on the internet and social media sources.

47. Media stories containing Defendant Labat's false narrative concerning Plaintiff extended beyond the local Atlanta and Georgia news outlets with stories gaining national media coverage including CNN, USA Today, and the Associated Press.

## COUNT ONE

### DEPRIVATION OF REPUTATIONAL LIBERTY
### Reputational Injury – Stigma Plus

48. Plaintiff restates paragraphs 1-47, as if fully restated here.

49. Upon Plaintiff's termination, Defendant Labat embarked upon a vitriolic public campaign designed to damage and stigmatize the personal reputation of the Plaintiff by falsely impugning blame for LaShawn Thompson's death on the Plaintiff, and to deprive Plaintiff of property rights to which he is legally entitled in violation of the Fourteenth Amendment to the United States Constitution.

50. Plaintiff had a legally protected property right in his employment and could only be terminated or disciplined for cause.

51. Defendant Labat arbitrarily and illegally deprived Plaintiff of his property rights and undertook all of the unlawful conduct giving rise to Plaintiff's claims while acting under color of State and local law.

52. Defendant Labat failed to provide Plaintiff with notice of any specific alleged policy violations or other alleged misconduct and therefore deprived him of any meaningful opportunity to clear his name.

53. Defendant Labat was deliberately indifferent to Plaintiff's rights.

54. Plaintiff has suffered damage to reputation, humiliation, embarrassment, mental and emotional anguish and distress and violation of right to free speech as protected under the Constitution as well as other compensatory damages, in an amount to be determined by a jury and the Court.

55. Plaintiff has been irreparably harmed by the Defendants' unlawful, retaliatory and defamatory actions.

56. The statements made by Defendant Labat to the media deprived Plaintiff of his reputational liberty rights as protected by the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.

57. Statements made publicly and to the media by Defendant Labat were beyond the scope of his official duties and were neither required nor

necessary to fulfill any official function of his office. These statements were solely done to intentionally deprive Plaintiff of his reputational liberty.

58. Defendant Labat was aware that his actions could lead to the immediate suspension and or investigation of Plaintiff's certifications as Peace Officers by the Georgia Peace Officer Standards and Training Council (POST), thereby having a negative effect on Plaintiff's professional reputations and state licensure.

59. Defendant Labat was motivated in his unconstitutional actions by a desire to deflect accountability and blame for Lashawn Thompson's death away from him and secure his future re-election as Sheriff of Fulton County.

60. Defendant Labat made statements confirming he knew Plaintiff had nothing whatsoever to do with the death of LaShawn Thompson and clarified his efforts and motivation to terminate Plaintiff, advising that he "needed to win reelection." Defendant Labat made said statements contemporaneously with his demand that Plaintiff resign.

61. Defendant Labat's statements to the media were not made to serve any lawful government purpose, were beyond the scope of his official duties, and were uttered and repeated through social media sites within his control in an effort to secure his re-election and damage Plaintiff's professional reputation.

62. The Plaintiff prays for compensatory and punitive damages, attorneys' fees, expert fees, costs, per se damages, and pre-judgement and post-judgement interest against Defendant Labat.

## COUNT TWO

### State Law Defamation

63. Plaintiffs restate paragraphs 1-47, as if fully restated here.

64. O.C.G.A. § 51-5-1 details the common law defamation per se tort.

65. As noted, Defendant Labat made televised public statements regarding Plaintiff.

66. These non-privileged statements were defamatory because they exposed the Plaintiff to public scorn, hatred and contempt, thereby discouraging others in the community from having a good opinion of, or associating with, the Plaintiff.

67. In making these statements, Defendant Labat knowingly made the aforementioned false and defamatory statements with actual malice or did so with reckless and/or intentional disregard for the truth.

68. Defendant Labat published these statements to countless people as a result of televised press conferences, and other methods including but not limited to social media sites. The aforementioned persons reasonably understood these publications to be defamatory.

69. Defendant Labat made such false and defamatory statements in connection with Plaintiff's profession knowing the same would damage his professional reputation as a law enforcement officer.

70. Defendant Labat acted with an intent to harm Plaintiff when these statements were published.

71. As a direct and proximate result of the false and defamatory statements published by Defendant Labat, the character and reputation of Plaintiff was harmed, his standing and reputation in his profession and in the community were impaired, and he suffered mental anguish and personal humiliation.

72. Since, and as a direct, proximate result of, Defendant Labat's defamatory actions, Plaintiff has been refused employment, has lost opportunities to continue his long-standing role as a television commentator, and has been unable to secure employment in the public or private sector.

73. Plaintiffs incorporate each of the above factual allegations as if fully restated here.

74. The Plaintiff prays for compensatory and uncapped punitive damages, attorneys' fees, expert fees, costs, and per se damages against Defendant Labat.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests the following relief:

A. That Defendant be served with a copy of the Summons and Complaint in this case;

B. That Defendant be required to timely answer the allegations and averments contained in the Complaint;

C. Declaratory judgement that Defendant violated Plaintiff's rights;

D. Compensatory damages against Defendant in an amount in excess of seventy-five thousand dollars ($75,000) to be determined at trial by jury upon all claims and matters for which a jury can be empaneled;

E. For an award of reasonable attorney's fees and costs expended pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988, 28 U.S.C. §1920; and, O.C.G.A. §13-6-11;

F. Punitive damages against Defendant Labat as to all applicable Counts; and

G. Award such other and further relief as this court deems just and proper.

This 13th day of April, 2024.

LoRusso Law Firm, P.C.

By:

_/s/ Lance J. LoRusso_
Lance J. LoRusso
Georgia Bar No. 458023

Ken Davis
Georgia Bar No. 705045

1827 Powers Ferry Road, S.E.
Building 8 Suite 200
Atlanta, Georgia 30339
Phone: 770-644-2738
Fax: 770-644-2379
lance@lorussolawfirm.com

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ADAM LEE III                             *
                                         *
        Plaintiff.                       *
                                         *        Civil Action
v.                                       *        File #_____
                                         *
PATRICK LABAT, in his                    *        JURY TRIAL DEMANDED
Individual AND official capacities as    *
Fulton County Sheriff                    *
                                         *
        Defendants.                      *

## CERTIFICATE OF SERVICE AND COMPLIANCE

The undersigned attorney hereby certifies that the foregoing document,

which was prepared in accordance with L.R. 7.1. using Times New Roman, 14-

point font, was filed using the Court's CM/ECF portal, which will automatically

send service copies to all counsel of record.

This 13th day of April, 2024.

                                  LoRusso Law Firm, P.C.

                                  By:

                                  /s/ Lance J. LoRusso
                                  Lance J. LoRusso
                                  Georgia Bar No. 458023

                                  Ken Davis
                                  Georgia Bar No. 705045

1827 Powers Ferry Road, S.E.
Building 8 Suite 200
Atlanta, Georgia 30339
Phone: 770-644-2738
Fax: 770-644-2379
lance@lorussolawfirm.com

*Counsel for Plaintiff*